IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                             PLAINTIFF

VS.                          CASE NO. 5:16-cr-50041-TLB-MEF-1

JOHNATHAN SANSONETTI                                                 DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2255 filed on August 28, 2018.  (ECF No. 60).  The United States filed its response on November

2, 2018.  (ECF No. 67).  Defendant filed a reply on December 7, 2018.  (ECF No. 68).  The matter

is ready for Report and Recommendation.

### I.  Background

On July 27, 2016, a Criminal Complaint was filed against Defendant, Johnathan Sansonetti

("Sansonetti"), alleging that on or about July 26, 2016, Sansonetti was in possession of

methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  (ECF No. 1).

Sansonetti was arrested on July 27, 2016 (ECF No. 6), and he made his initial appearance before the

Hon. Erin L. Setser[1] on July 29, 2016, at which time Sansonetti waived the issues of probable cause

and detention.  (Text Only Minute Entry).  Sammi Wilmoth ("Wilmoth"), a Criminal Justice Act

("CJA") panel attorney, was appointed to represent Sansonetti.  (*Id.*).

On August 9, 2016, Sansonetti was named in an Indictment charging him with: conspiracy

to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); possession with intent to

distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and

---

[1] Now the Hon. Erin L. Wiedemann.

-1-

841(b)(1)(A)(viii) (Count Two); and, possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).  (ECF No. 7).  Sansonetti was arrested on August 10, 2016 (ECF No. 16), and he appeared for arraignment before Judge Setser on August 12, 2016, at which time Sansonetti entered a not guilty plea to the Indictment.  (ECF No. 12).

After obtaining two continuances of the trial date (ECF Nos. 18, 19, 22, 23), Sansonetti appeared on January 6, 2017 before the Hon. Timothy L. Brooks, United States District Judge, for a change of plea hearing.  (ECF No. 27).  Pursuant to a written Plea Agreement, Sansonetti pleaded guilty to Count Two of the Indictment charging him with possession with intent to distribute more than 500 grams of methamphetamine.  (ECF No. 27; ECF No. 28, ¶ 1).  The Court determined that Sansonetti's guilty plea was voluntary, supported by a factual basis, and the plea was accepted.  (ECF No. 27).  The Court expressed tentative approval of the Plea Agreement pending completion of a presentence report.  (*Id*.).

An initial Presentence Investigation Report ("PSR") was prepared on March 8, 2017.  (ECF No. 32).  Sansonetti was found to be accountable for 11.64 kilograms of actual methamphetamine, resulting in a base offense level of 38.  (*Id*., ¶¶ 27, 33).  A two-level specific offense characteristic adjustment was applied, pursuant to U.S.S.G. § 2D1.1(b)(1), as a firearm was possessed.  (*Id*., ¶ 34).  Pursuant to U.S.S.G. § 2D1.1(b)(12), another two-level specific offense characteristic adjustment was applied as Sansonetti maintained a premise for the purpose of manufacturing or distributing a controlled substance.  (*Id*., ¶ 35).  A third two-level specific offense characteristic adjustment was applied, pursuant to U.S.S.G. § 2D1.1(b)(15)(A), because Sansonetti received an adjustment under U.S.S.G. § 3B1.1 (Aggravating Role) and the offense involved using friendship or affection to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances;

the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances; and, the individual had minimal knowledge of the scope and structure of the enterprise. (*Id.*, ¶ 36). Finding that Sansonetti was an organizer, leader, manager, or supervisor of the criminal activity, a two-level adjustment for role in the offense was applied pursuant to U.S.S.G. § 3B1.1(c). (*Id.*, ¶ 38). Sansonetti's adjusted offense level was 46. (*Id.*, ¶ 40). After a three-level reduction for acceptance of responsibility, Sansonetti's total offense level was determined to be 43. (*Id.*, ¶¶ 42-44).

Sansonetti was found to have zero criminal history points, placing him in criminal history category I. (*Id.*, ¶ 51). The statutory minimum term of imprisonment for the offense of conviction is 10 years, and the maximum term of imprisonment is life. (*Id.*, ¶ 77). Based on a total offense level of 43 and a criminal history category of I, the advisory guideline range for imprisonment was life. (*Id.*, ¶ 78).

On March 21, 2017, the United States made one objection to the PSR, noting that two other cases, *United States v. Stacy Len Lisenbery*, No. 5:15-cr-50007-001, and *United States v. Wesley Sansonetti*, No. 5:16-cr-50038-001, are related cases. (ECF No. 38).

Sansonetti made numerous objections to the PSR, some of which sought to clarify information reported in the PSR, but also: to the two-level adjustment for exploiting a familial relationship to involve another individual in the criminal activity; to the two-level adjustment for maintaining a premise for the purpose of manufacturing or distributing a controlled substance; and, that while he was working with the Sinaloa Cartel, he was not a part of that organization. (ECF No. 37).

A final PSR was submitted to the Court on April 6, 2017. (ECF No. 42). U.S. Probation

added the two cases identified by the United States as related cases, and the details regarding these cases were included in the final PSR. (ECF No. 42-1, p. 1). Regarding Sansonetti's objections, U.S. Probation made certain factual revisions to the PSR[2], and it removed the two-level adjustment for exploiting a familial relationship to involve another individual in the criminal activity; however, several of Sansonetti's objections were still noted to be "unresolved." (*Id.*, pp. 1-5). After all revisions, Sansonetti's total offense level was determined to be 41. (ECF No. 42, ¶¶ 44). Based on a total offense level of 41 and a criminal history category of I, the advisory guideline range for imprisonment was 324 to 405 months. (*Id.*, ¶ 78).

Wilmoth filed a Sentencing Memorandum on Sansonetti's behalf on August 2, 2017. (ECF No. 51). Wilmoth argued that after considering the factors in 18 U.S.C. § 3553, the Court should vary downward from the guidelines range of 324 to 405 months to impose a sentence of 120 months. (*Id.*, p. 2). Wilmoth pointed to the following factors: that Sansonetti acknowledged his conduct was wrongful and had accepted responsibility for his actions; that Sansonetti had a wife and young child; that he was the sole source of support for his family, and the family was suffering financially while he was incarcerated; that Sansonetti had no criminal history of any kind; and, that since his incarceration Sansonetti had dedicated his life to God and had been baptized. (*Id.*, pp. 2-3). It was argued that a sentence of 10 years would be sufficient punishment for the crimes committed, reflect the seriousness of the offense, and would deter Sansonetti from future criminal conduct. (*Id.*, p. 3). Alternatively, Wilmoth asked the Court to consider a below-guidelines sentence based on any motions made by the United States. (*Id.*, p. 4). The United States filed a Motion for Downward Departure on August 8, 2017, and it recommended a four-level downward departure. (ECF No. 52).

---

[2] None of these factual objections affected the guidelines calculation.

Sansonetti appeared for sentencing on August 16, 2017. (ECF No. 54). The Court made inquiry that Sansonetti was satisfied with his counsel; that Sansonetti and his counsel had an opportunity to read and discuss the PSR; the PSR was reviewed in open court; final approval of the Plea Agreement was expressed; the Government's motion for a downward departure was granted; counsel and Sansonetti were afforded the opportunity to make statements and present information in mitigation of sentence; and, the Court imposed a below-guidelines sentence of 188 months imprisonment on Count Two, plus five years supervised release, a fine of $25,000.00, and a $100.00 special assessment. (*Id*.). Sansonetti was advised of his appeal rights. (*Id*., p. 2). Judgment was entered by the Court on August 17, 2017. (ECF No. 56). The Court's Statement of Reasons reflects that the PSR was adopted without change; that the Court granted the Government's motion for a downward departure of four levels, resulting in a total offense level of 37 and a guidelines range of 210 to 262 months imprisonment; and, that the Court granted a defense motion for a downward variance based on various § 3553(a) factors, finding that a sentence of 188 months is sufficient but not greater than necessary. (ECF No. 57).

On August 21, 2017, within his time to file an appeal, Sansonetti signed an Appeal Rights Form advising that he discussed his right to appeal with his counsel; that he understood he had the option to appeal his conviction and/or sentence; and, that after reviewing his appeal options with counsel, and having had an opportunity to discuss his case and ask any questions he may have, he made the decision not to appeal his conviction or his sentence. (ECF No. 58). Sansonetti did not pursue a direct appeal from the Judgment.

On August 28, 2018, Sansonetti filed his *pro se* Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255. (ECF No. 60). To summarize, Sansonetti makes the following

claims: (1) his guilty plea was involuntary and unknowing because his counsel failed to advise him that the Court could hold him accountable for more than 500 grams of methamphetamine; (2) his counsel failed to investigate the involvement of other individuals; (3) his counsel failed to file a motion to dismiss the Indictment due to sentencing entrapment; and, (4) his counsel failed to file an appeal.

The United States' response to the motion was filed on November 2, 2018.  (ECF No. 67). Sansonetti filed a reply on December 7, 2018.  (ECF No. 68).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Sansonetti's Petition and the files and records of this case conclusively shows that Sansonetti is not entitled to relief, and the undersigned recommends the denial and dismissal of his Petition with prejudice without an evidentiary hearing.

## A.  Standards Applicable to Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases."  *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689.  Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission.  *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).  If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim.  *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Observing that an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective, and finding that to set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him, the United States Supreme Court has

clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993) (quoting *Strickland*, 466 U.S. at 687).

## B.  Validity and Effect of Sansonetti's Guilty Plea

Sansonetti entered a guilty plea to the offense of conviction.  He now alleges his guilty plea was involuntary because he "believed he was pleading guilty to 500 grams or more of methamphetamine, but he was never in agreement to a ridiculous amount of 20 kilograms," and "his attorney did not advise him that the Court could hold him accountable for more than 500 grams of methamphetamine."  (ECF No. 60, p. 10).  The record plainly shows otherwise.

### 1.  Standards Applicable to Guilty Pleas

One who enters a plea of guilty waives his right to request relief under 28 U.S.C. § 2255 except for those issues related to jurisdiction only.  *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure, privilege against self-incrimination, and failure to disclose favorable evidence), *cert. denied*, 493 U.S. 869 (1989).

When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea.  *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

prior to the entry of the guilty plea.  *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*[3].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings."  *Id*. at 267 (emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255.  *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927).  "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).  A defendant has a heavy burden to overcome those admissions

---

[3] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").

and show that his guilty plea was involuntary.  *Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

## 2.  Sansonetti's Guilty Plea Was Voluntary and Intelligent

Sansonetti was represented by experienced counsel, Wilmoth, throughout the criminal proceedings leading to and including the change of plea hearing.  Wilmoth represented Sansonetti at his initial appearance (Text Only Minute Entry) and arraignment (ECF No. 12), and she requested discovery in open court during the arraignment.  Wilmoth sought and obtained two continuances of the trial date to prepare for trial and explore the possibility of a plea agreement.  (ECF Nos. 18, 22).  Wilmoth negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case.  (ECF No. 28).

Wilmoth represented to the Court that she carefully reviewed the Plea Agreement with Sansonetti before obtaining his signature on it.  (ECF No. 28, ¶ 27(a)).  The written Plea Agreement informed Sansonetti of the count of conviction, being Count Two of the Indictment, and the counts to be dismissed.  (*Id*., ¶ 1).  Sansonetti acknowledged that he had fully discussed with his counsel the facts of the case and the elements of the crime to which he was pleading guilty; he agreed that he committed each of the elements of the crime to which he was pleading guilty; and, he admitted the factual basis for the guilty plea.  (*Id*., ¶ 4).  Sansonetti also acknowledged that he had been advised of his constitutional and statutory rights, including the right to persist in his plea of not guilty, and that he had been informed of the maximum penalties.  (*Id*., ¶¶ 5, 12).

By signing the Plea Agreement, Sansonetti represented to the Court that he read the agreement and had carefully reviewed "every part of it" with his counsel; that he fully understood the Plea Agreement and was not under the influence of anything that could impede his ability to fully understand it; that no promises, agreements, understandings, or conditions had been made or entered

into in connection with the decision to plead guilty except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by his defense counsel in connection with the Plea Agreement and matters related to it; and, that he entered into the Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion. (*Id*., ¶ 26).

During the change of plea hearing held on January 6, 2017, Sansonetti was sworn on oath and examined about the offense. The Court inquired about Sansonetti's age and level of education; inquiry was made as to whether Sansonetti was under the influence of alcohol or drugs, and whether he was able to comprehend the proceedings; inquiry was made as to whether Sansonetti was satisfied with his counsel; the possible severity of sentence was explained; and, Sansonetti's constitutional and statutory rights were reviewed. (ECF Nos. 27, 62). The Court specifically inquired, "[i]s your desire to enter a guilty plea today something that you seek to do of your own free will and volition because you're guilty and for no other reason?" Sansonetti responded, "[y]es, Your Honor." (ECF No. 62, p. 20). Upon such inquiry in open court, the Court determined that Sansonetti's guilty plea was voluntary and intelligent, and that there was a factual basis to support the guilty plea. (ECF Nos. 27, 62).

As for the quantity of methamphetamine involved in the offense conduct to which Sansonetti was pleading guilty, the Plea Agreement contains Sansonetti's stipulation that in June 2016 a confidential source was used to arrange and conduct a controlled purchase of methamphetamine from Sansonetti; that 217.2 grams of actual methamphetamine were located in Sansonetti's vehicle during the traffic stop on July 26, 2016; and, that 11.2 kilograms of actual methamphetamine were located during the search of his residence on the same date. (ECF No. 28, ¶ 4(b)). During the

change of plea hearing, Sansonetti admitted those facts were true and that the Government could prove those facts if the case proceeded to trial.  (ECF No. 62, pp. 30-34).

The Plea Agreement explicitly informed Sansonetti that at the sentencing hearing "the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to defendant's background, character and conduct, *including the conduct that is the subject of this investigation for which he has not been charged* up to the date of the agreement, *and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement* ..."  (ECF No. 28, ¶ 16) (emphasis added).  In her Affidavit, Wilmoth states that "relevant conduct can be somewhat unpredictable prior to the Presentence Report being issued," but she utilized the discovery available to her in each case and conferred with AUSA Harris to determine the amount of methamphetamine that would likely be attributed to Sansonetti.  (ECF No. 67-1, p. 2).  Wilmoth went over that information "in great detail" with Sansonetti, and "[a]ll of the information that was available to me with regard to potential relevant conduct was relayed to Mr. Sansonetti during many meetings that we discussed discovery and trial strategy." (*Id*., pp. 2-3).  The Court also informed Sansonetti that "the government will not be limited to providing information that only specifically goes with Count Two that you're pleading guilty to," and Sansonetti stated his understanding that the Court may take into consideration "relevant conduct."  (ECF No. 62, pp. 29-30).

The final PSR included only those amounts of methamphetamine directly attributed to Sansonetti: the intercepted package shipped to a co-conspirator, Stacy Lisenbery, in February 2015 (599.8 grams of actual methamphetamine); the June 2016 controlled purchase (220.1 grams of actual methamphetamine); the July 26, 2016 traffic stop (217.2 grams of actual methamphetamine); and,

the July 26, 2016 search of his residence (11.2 kilograms of actual methamphetamine), for a total of 12.24 kilograms of actual methamphetamine. (ECF No. 42, ¶¶ 14(b), 16, 19, 21, 28). Not included in the calculation were the 100 pounds (45.4 kilograms) of methamphetamine Sansonetti had previously sent to Lisenbery. (*Id.*, ¶¶ 14(c), 27).

Sansonetti's assertion that he "believed he was pleading guilty to 500 grams or more of methamphetamine, but he was never in agreement to a ridiculous amount of 20 kilograms," is undermined by his own acknowledgments and admissions on the record. Sansonetti's conclusory allegations fail to establish that his counsel's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011). Accordingly, Sansonetti's claim that his guilty plea was involuntary and unknowing is subject to summary dismissal.

### C. Failure to Investigate and to File a Motion to Dismiss the Indictment

Sansonetti also claims Wilmoth "completely relied on the hearsay information from the government's discovery with respect to his co-defendants," and she "failed to investigate their actual involvement in the case." (ECF No. 60, p. 11). Sansonetti alleges the June 2016 controlled buy was "outrageous government conduct, which supports a finding of sentencing manipulation," that "[a]bsent dismissal of the indictment on those grounds, [he] contends at a minimum he was entitled to a downward departure," and he blames Wilmoth for not filing a motion to dismiss the Indictment because of sentencing manipulation. (*Id.*, p. 12). Neither of these claims have merit.

### 1. Failure to Investigate

Though a pro se § 2255 motion is to be liberally construed, the petition must assert facts

regarding counsel's performance. *Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001).

Aside from Sansonetti's conclusory allegation that Wilmoth failed to investigate the involvement

of Sansonetti's co-defendant and two other individuals in related cases, Sansonetti provides no

specific facts to support his claim. He does not state what information could have been learned from

any such investigation, nor does he explain how he was prejudiced by Wilmoth's alleged failure to

investigate. Vague and conclusory allegations are not sufficient to state a ground for relief under 28

U.S.C. § 2255. *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986), *cert. denied*, 479 U.S.

965 (1986); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations,

unsupported by any specifics, are subject to summary dismissal).

One of the individuals mentioned, Fernando Barraza-Quintero, was Sansonetti's co-defendant

in the same Indictment. (ECF No. 7). Sansonetti and Barraza-Quintero were arrested at the same

time during a traffic stop. (ECF No. 1, ¶ 6). On January 6, 2017, the same date as Sansonetti's

change of plea hearing, Barraza-Quintero pled guilty to Count One of the Indictment charging him

with conspiracy to distribute methamphetamine. (ECF No. 42, ¶ 12).

Another individual is Sansonetti's brother, Wesley Sansonetti. (ECF No. 1, ¶ 5). Wesley

Sansonetti was indicted on August 9, 2016 for conspiracy to distribute methamphetamine. (ECF No.

42, ¶ 12(b); Case No. 5:16-cr-50038, ECF No. 1). Wesley Sansonetti pled guilty to that indictment

on April 27, 2017. (Case No. 5:16-cr-50038, ECF Nos. 14, 15).

The third individual is Stacy Len Lisenbery, who on April 22, 2015 was convicted of

conspiracy to distribute methamphetamine. (ECF No. 42, ¶ 12(a)). Lisenbery was arrested after a

package containing 599.8 grams of actual methamphetamine had been intercepted by law

enforcement. (*Id.*, ¶¶ 14(a, b)). During post-arrest interviews, Lisenbery admitted to investigators

that he knew the package contained methamphetamine, and he identified Sansonetti as his source

of supply.  (*Id*., ¶ 14(c)).  Wilmoth states that she did investigate Lisenbery's involvement, but she

did not discover any legal basis for attacking the Indictment against Sansonetti.  (ECF No. 67-1, ¶

3).  Sansonetti alleges none in his Petition, other than his contention that the Government had

engaged in sentencing manipulation.  That contention, however, does not concern Lisenbery, but

instead, the Government's use of a confidential source.  Wilmoth also states all of the information

regarding Sansonetti's relevant conduct was available to her, including Lisenbery's statements, and

she relayed that information to Sansonetti when they discussed discovery and trial strategy.  (*Id*., ¶

6).  Notably, the information from Lisenbery regarding the quantity of methamphetamine Sansonetti

had supplied him with was not used by U.S. Probation in calculating Sansonetti's guidelines range.

(ECF No. 42, ¶ 27).

Following his arrest, Sansonetti waived his *Miranda* rights and gave a detailed confession

of his methamphetamine trafficking activities in Arkansas.  (*Id*., ¶¶ 23-25).

As the United States points out, the facts of Sansonetti's case "left little for Attorney

Wilmoth to investigate."  Considering the record, and the vague and conclusory allegations in

Sansonetti's § 2255 Petition, the undersigned can find no deficient performance by Wilmoth in the

investigation of this case.  And, Sansonetti voluntarily and intelligently pled guilty to Count Two of

the Indictment, thereby waiving all non-jurisdictional defenses.  *Smith*, 876 F.2d at 657.

Accordingly, his claim of ineffective assistance of counsel for failure to investigate fails.

### 2.  Failure to File a Motion to Dismiss

Sansonetti alleges "the June 16[,] 2016 buy where the government utilized a CS was

outrageous government conduct, which supports a finding of sentencing manipulation," and that

"[a]bsent dismissal of the Indictment on those grounds, Johnathan Sansonetti contends at a minimum he was entitled to a downward departure." (ECF No. 60, p. 12). He claims Wilmoth should have filed a pre-trial motion to dismiss the Indictment because of sentencing manipulation. (*Id*.). The United States responds that there was no basis to file a motion to dismiss the Indictment. (ECF No. 67, p. 13). Sansonetti's claim of outrageous government conduct leading to sentencing manipulation finds no support in the record.

"Entrapment, as a defense to criminal liability, developed from concern that the government might induce an otherwise law-abiding individual to engage in criminal conduct. The concept of 'sentencing entrapment,' by comparison, represents a more recent development in response to modern sentencing-guidelines systems." *United States v. Ruiz*, 446 F.3d 762, 773 (8th Cir. 2006) (internal citations omitted). "Sentencing entrapment occurs when official [government] conduct leads a defendant predisposed to deal only in small quantities of drugs to deal in larger quantities, leading to an increased sentence." *Id*. at 773-74 (internal citations omitted). The predisposition of the defendant to commit the crime represents the major focus of the sentencing entrapment analysis, but the government's conduct acts as a triggering mechanism, i.e., the defendant must prove that "the government induced the defendant to commit the crime." *Id*. at 774 (internal citations omitted).

"Participation by government agents or informants in the illegal manufacture or distribution of drugs is a recognized means for the government to obtain convictions in drug-related offenses." *United States v. Berg*, 178 F.3d 976, 979 (8th Cir. 1999) (citing *United States v. Russell*, 411 U.S. 423, 432 (1973)). When government agents or informants "go too far in manufacturing a crime and inducing a defendant into it," however, their conduct may violate the defendant's right to due process. *Id*. (internal citations omitted). The Eighth Circuit has stated that the level of

-16-

outrageousness needed to prove such a due process violation is quite high. *Id*. (internal citation omitted). Thus, the defense of outrageous conduct "focuses on the government's conduct," while the defense of entrapment focuses on the defendant's predisposition to commit a crime. *Id*. (internal citation omitted).

In contrast, "sentencing manipulation" focuses on "whether the government stretched out the investigation merely to increase (the defendant's sentence)." *United States v. Mai Vo*, 425 F.3d 511, 514 (8th Cir. 2005) (internal citation omitted). The defense is undermined by evidence that a series of undercover purchases was made for the purpose of probing "the depth and extent of a criminal enterprise, [determining] whether co-conspirators exist, [or tracing] the drug deeper into the distribution hierarchy." *Id*. (internal citation omitted).

Other than his conclusory allegation that use of a confidential source ("CS") to make a controlled buy was "outrageous government conduct," Sansonetti fails to specify how sentencing manipulation or sentencing entrapment would apply here where his sentence was largely based on the 217.2 grams of actual methamphetamine located in his vehicle during the traffic stop on July 26, 2016 and the 11.2 kilograms of actual methamphetamine located during the search of his residence. There is ample evidence indicating Sansonetti's predisposition to distributing methamphetamine, but nothing to show that the CS involved in the one controlled buy on June 16, 2016 induced Sansonetti to commit a crime. Nor is there any showing that Sansonetti was only predisposed to deal in small quantities of drugs, but because of government conduct was induced to deal in larger quantities, leading to an increased sentence. Finally, there is nothing in the record to support a conclusion that the government stretched out the investigation merely to increase Sansonetti's sentence.

In her Affidavit, Wilmoth states it is not uncommon for the government to utilize confidential informants and to conduct controlled buys, and whether the government conducts one, two, three, or more controlled buys "is not a basis to file a motion to dismiss an indictment," and that in her opinion there was no legal basis for filing a motion to dismiss the Indictment because of the use of a CS to make one controlled buy of methamphetamine.  (ECF No. 67-1, pp. 1-2).  The undersigned agrees.  Ineffective assistance of counsel cannot be based on the failure to raise a meritless argument. *Larson v. United States*,  905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Sansonnetti's claim of outrageous government conduct resulting in sentencing manipulation should be summarily denied.

### D.  Failure to File an Appeal

Sansonetti also challenges the waiver of appeal "memorialized in [his] Plea Agreement," and he faults Wilmoth for not filing an appeal on his behalf.  (ECF No. 60, pp. 8-9).  Sansonetti's allegations are contradicted by the record, and this claim is also subject to summary dismissal.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  *Id*. (internal citations omitted).  This is so "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice"; failure to do so cannot be considered a strategic decision, as "filing a notice of appeal is a purely ministerial task"; and, "the failure to file reflects inattention to the defendant's wishes."  *Id*.  As for prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an appeal

-18-

that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484. Thus, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling a petitioner to § 2255 relief, with no inquiry into prejudice or likely success on appeal being necessary. *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citing *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) and *Roe v. Flores-Ortega*, 528 U.S. at 478).

For such a claim to succeed, however, "the defendant must show that he manifestly instructed his counsel to file an appeal." *Walking Eagle*, 742 F.3d at 1082 (internal quotation and citation omitted). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

As noted by the United States, Sansonetti's written Plea Agreement does not contain an appeal waiver. (ECF No. 28). After imposing sentence, the Court advised Sansonetti of his appellate rights. (ECF No. 54, p. 2). Wilmoth states that she met with Sansonetti at the Washington County jail to discuss his right to appeal. She informed him that "he had an absolute right to appeal," even though she felt there was no basis for an appeal. (ECF No. 67-1, ¶ 9). She discussed with Sansonetti the "rather large reduction" he received at sentencing, and the possibility that even if he were successful in appealing his case, he could receive a greater sentence upon re-sentencing because the Court could sentence him anywhere within the statutory range. (*Id*.). According to Wilmoth, Sansonetti told her he did not want an appeal, and he signed a form confirming that decision. (*Id*.). Wilmoth then explained to Sansonetti that if he changed his mind he would have to let her know immediately and she would file a notice of appeal on his behalf. (*Id*.). She states

Sansonetti never contacted her after that meeting to request the filing of an appeal.  (*Id*.).

The document Wilmoth refers to is entitled "Appeal Rights Form," and it acknowledges: that Sansonetti discussed the right to appeal with counsel; that he understood he has the option to file an appeal; that he may appeal his conviction and/or sentence; and, that after reviewing his options with counsel, and having an opportunity to discuss his case and ask any questions he has, he made the decision not to appeal.  The document is signed and dated by Sansonetti.  (ECF No. 58).

Sansonetti does not allege in his § 2255 Petition that he ever instructed Wilmoth to file an appeal on his behalf, but rather, it is "crystal clear" that he has not intentionally waived his rights to an appeal.  (ECF No. 60, p. 9).  He offers no specific supporting facts.  Further, Sansonetti's actions following his sentencing are simply not consistent with those of a "reasonable person who was concerned with losing [his] appeal."  *See Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).  As in *Barger*, Sansonetti made no attempt to follow-up with his counsel before the time to appeal had passed.  Nor did Sansonetti contact the Clerk of Court to request that a notice of appeal be prepared and filed on his behalf.

Considering the Court's notification of appellate rights during sentencing, Sansonetti's subsequent execution of a document evidencing his decision not to pursue an appeal, Sansonetti's failure to take any action to manifestly demonstrate his intent to appeal, and Sansonetti's failure to even allege in his § 2255 Petition that he instructed counsel to file an appeal, his bare assertion that he had not intentionally waived his right to appeal is insufficient to support habeas relief.  Sansonetti's allegations are contradicted by the record, inherently incredible, mere conclusions, and they do not entitle him to relief.

-20-

### E.  No Evidentiary Hearing Is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief.  *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255).  No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.*, 541 F.3d 814, 817 (8th Cir. 2008).

Such are the circumstances in this case.  A thorough review of Sansonetti's § 2255 Petition, the files and records of this case, and applicable law shows that Sansonetti is not entitled to relief.  The summary denial and dismissal of Sansonetti's § 2255 Petition, without an evidentiary hearing, is recommended.

### F.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Sansonetti has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Sansonetti's claims are unsupported by the record in this case.  It is recommended that Sansonetti's Petition for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2255 (ECF No. 60) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of February 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE